ANDREW A. LE BEAU, Appellant, *v.* DOMINIQUE GAVEN, GALLIS FAHRMANN AND JOHN BUCHIED, Respondents.

*Lands—Confirmations.*—A confirmation of a lot by the Board of Commissioners in 1811, is a better title than a confirmation by the act of Congress of June 13, 1812, § 1, by virtue of inhabitation, cultivation and possession prior to December 20, 1803, as all prior confirmations were expressly excepted by said act of June 13, 1812.

*Appeal from the St. Louis Land Court.*

*Morehead,* for appellant.

*T. T. Gantt,* for respondents.

HOLMES, Judge, delivered the opinion of the court.

The plaintiff claimed title under the act of Congress of the 13th of June, 1812. He endeavored to prove a possession

Le Beau v. Gaven et als.

of the land in controversy by John B. Petit, prior to the 20th day of December, 1803. He put in evidence a concession to one Amoit, dated September 7, 1780, of a lot bounded north by Cotté, south by Little river, and on the one end by the public road leading to the bridge over Little river, and on the other end by the King's domain, or the shore of the Mississippi, and containing 120 feet in width by 150 feet in depth ; also a deed from Amoit to Petit, dated September 12, 1780, by the same description, and a derivative title downward, by a similar description, until 1825. In 1835 this lot was marked on Brown's plat of surveys of block No. 46 of the city of St. Louis, with the dimensions called for in the concession and deeds, but not going to the Mississippi river on the eastern boundary, and thereafterwards the several conveyances down to the plaintiff describe the lot with those exact dimensions, and as bounded on the east by owners unknown, or by parts of the same block. There was never any approved and recorded public survey of this lot. The plaintiff further read the deposition of a witness as tending to prove a possession by Petit prior to 1803, of the land in controversy here, fronting westwardly on Second street, and running back eastwardly several hundred feet to the Mississippi river, including all the accretions made since the date of the concession.

The defendants claimed title under a confirmation by the Board of Commissioners under the act of Congress of March 3, 1807, dated December 6, 1811, to the legal representatives of John B. Provenchere, on the ground of ten years' consecutive possession prior to the 20th of December, 1803 ; the land to be surveyed conformably to the possession, and it was officially surveyed in 1835, and the survey was finally approved and recorded on the 13th of June, 1845. The original concession, the confirmation, and the survey, distinctly call for the bank of the Mississippi river as the eastern boundary of the land granted and confirmed. The defendant also gave evidence tending to prove a continuous possession of the land from 1805, under this claim of title, down to the

36—VOL. XXXVII.

present time. No patent appears to have been issued. As
to whether or not the calls and descriptions contained in the
concession and deeds, under which the plaintiff claims, were
such as to give a title to the accretions as made on that lot,
or whether the testimony offered by the plaintiff amounted
to any proof of an actual possession of this identical land by
John B. Petit, prior to 1803, with whatever definite extent
and boundary, it will be unnecessary here to decide. That
the calls and descriptions contained in the defendant's title
papers, from the original concession to the final survey, called
for the bank of the Mississippi river as the eastern boundary,
in such manner as to carry all the accretions made thereon
since the origin of the title, there is not the least room for
doubt. The confirmation by the Board of Commissioners
in 1811 was prior in time to any there could be under the
act of the 13th June, 1812. It did not vest the legal title
in the claimant by its own direct force, though it was a final
decision in their favor, but the decision and report were con-
clusive evidence of the equitable right—Burgess v. Gray, 16
How., U. S. 48. A survey was still necessary to designate
the precise tract of land confirmed, and a patent would be
required to convey the legal title. . The Commissioners had
full power to judge the existence of good titles to land held
under French and Spanish possessors, and their decisions
were to be final against the United States when in favor of
the claimant. There was an equitable title, then, with a
right to. have a survey made and a patent issued for a tract
of land confirmed, and to be more exactly defined by the
survey—2 U. S. Stat. 440, § 4; West v. Cochran, 17 How.,
U. S. 403. Whether this title would be sufficient to support
an action of ejectment, or not, it was clearly a confirmation
by the Board of Commissioners so far as they had power to
confirm, and this is enough to bring the case within the ex-
press exception of the act of June 13, 1812, in these words,
" provided, that nothing herein contained shall be construed
to affect the rights of any persons claiming the same lands,
or any part thereof, whose claims have been confirmed by

the Board of Commissioners for adjusting and settling claims to land in said territory "—2 U. S. Stat. 750, § 1. It would seem to be very plain, that Congress did not intend by this act to interfere with claims which had already been presented, investigated and finally confirmed. These claims were to be proceeded with until the final evidences of title should be completed in conformity with the provisions of the former act. This being so, a complete defence was established to any title which the plaintiff could claim under the first section of the act of the 13th June, 1812, either to the land or to the accretions.

As this point effectually disposes of the whole case, it will be useless to examine the instructions in detail. We have found no such error in the rulings of the court below as to require a reversal.

Judgment affirmed. Judge Wagner concurs; Judge Lovelace absent.